PARKER *v.* GILLIS ET AL.

[66 South. 978.]

1. INFANTS. *Contracts. Trust deed. Seizure of property. Rights of parties. Maturity of debts. Misrepresentation by mortgagor.*
When a minor brings an action of replevin for a horse, against the trustee who had taken possession of the horse under a trust deed given by the minor on the property to secure a note, the

minor has the right to plead his minority and repudiate his con-
tract, and in such case a peremptory instruction for the trustee
was erroneous.

2.  CHATTEL MORTGAGE.  *Seizure of property.  Maturity of debt.*
    The trustee, under a deed of trust given on property to secure a
    note, cannot take possession of the property until the maturity
    of the note, unless there is some provision in the deed of trust
    authorizing it.

3.  CHATTEL.  *Mortgage.  Right of parties.  Misrepresentation of mort-*
    *gagor.*
    The beneficiary, under a deed of trust upon a horse given to secure
    a debt, can rescind the contract for fraudulent misrepresenta-
    tion by the mortgagor, but he cannot, on that ground, seize and
    sell the property before the maturity of the debt, which would be
    an affirmance of the contract.

APPEAL from the circuit court of Neshoba county.

HON. C. L. DOBS, Judge.

Replevin by A. L. Parker against J. K. Gillis, and
others. From a judgment for defendant, plaintiff ap-
peals.

*J. B. Guthrie,* for appellant.

As to the proposition as to what right appellees had
to take the property involved in this case before the
deed of trust became due, we desire to say that under
section 2779 of the Code of 1906, the mortgagor holds
the legal title until after breach of the condition, and
this contention of ours is upheld by the case of *Buck* v.
*Payne and Raines,* 52 Miss. 271; and the only later case
is that of *Reiley* v. *Carter,* 23 So. 435. Suppose that in
the case at bar, that Sanford would have lost his money,
did he not have the right to contract in the first instance
for his trustee to take charge of the property in case the
same became endangered as security for the debt? If
he failed to so stipulate in the contract, then he had no
right to take the property until after the breach of the
conditions in the deed of trust, according to the above-

cited cases. For the sake of argument, grant that the property was being put out of reach of Sanford (and the record, instead of showing that it was being placed beyond his reach, shows that it was in the county in which the trust deed was given at the time the same was taken by the trustee, and shows that Parker had ridden one of the horses to Smith county on a visit to his father), in that event, Sanford would have had no right under the contract he had with Parker to have taken the property until after breach of condition, because Sanford had no title to the horses, and, therefore no right to take them until after Parker failed to pay the debt. Appellees contend that at the time the case was tried that the note was then due, but that fact would not keep the action of Gillis and Sanford from being premature in taking possession of the property before they had a right to take it under the contract and the law with reference to said contract. The cases cited are, in our opinion, absolutely conclusive on this point, and the case should be reversed, and the court here enter judgment for Parker, if there were no other proposition upon which to base a reversal.

As to the other proposition in the case we submit that Parker does not hold the consideration which he received from Sanford. From Sanford, Parker secured a loan of some money with the understanding that Sanford was to pay the same to Mr. Molpus, and that was done, to secure Sanford for the money so borrowed; Parker gave a deed of trust on the two horses involved in this suit, and when Parker became of age he chose to repudiate the contract. It amounted to nothing more nor less than if Sanford had loaned Parker the same amount of money, leaving out the deed of trust to Molpus, and taken a deed of trust on the horses, and then Parker had spent the money, and had then chosen to repudiate the deed of trust. Parker could have repudiated the deed of trust to Molpus for the same reason

that he has chosen to repudiate the one given to San-
ford. Molpus never owned the horses himself, but only
loaned Parker the money and took a deed of trust on
the horses. Can Sanford now say that he would be in
any better position to hold the horses than was Molpus?
By no process of reasoning can it be held that the horses
were ever the property of Sanford or that he furnished
the same to Parker. It seems to us absurd to even sug-
gest that the horses furnish the consideration to Parker
for the deed of trust.

Assuming that it is clear to the court that the only
consideration which Parker ever received was the money
which Sanford paid to Molpus, then was it necessary
for that money to be returned before the appellant could
repudiate his contract? The leading cases from our own
state are the cases of *Harvey* v. *Briggs,* 68 Miss. 60, 8
So. 274; *Brantley* v. *Wolfe,* 60 Miss. 420; *Watson* v.
*Peebles,* 56 So. 881. See, also, to the same effect 22 Cyc.
557 and the cases cited; 22 Cyc. at page 613 and the cases
cited; *Wuller* v. *Chuse Grocery Co.,* 241 Ill. 398, and the
same case is found with elaborate notes in 16 Am. &
Eng. Ann. Cas., 522; *Gillis* v. *Goodwin,* 61 N. E. (Mass.)
813.

We might go on piling up authorities on this proposi-
tion, but we think these are sufficient.

*G. E. Wilson,* for appellee.

The theory of appellee and the theory upon which the
case was decided in the lower court is that the contract
out of which this suit grows was based upon the fraudu-
lent representations of appellant, upon which appellee
acted and was thereby deceived.

We submit that the conduct upon the part of appellant
brings his conduct within the general rule as to what
constitutes fraud as laid down in 20 Cyc., page 13; (1)
that defendant made a material representation; (2) that

it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. 9 Cyc., page 433; *Patten-Worsham Drug Co.* v. *Planters' Mercantile Co.,* 86 Miss. 423, 38 So. 209; *Hilliard* v. *Cagle,* 46 Miss. 309; *Vincent* v. *Corbitt,* 94 Miss. 46, 47 So. 641; *Hilliard* v. *Cagle,* 46 Miss. 309; *Strong* v. *Hinds,* 35 Miss. 201.

We submit that these authorities completely answer appellant's contention in regard to the admission and · exclusion of evidence, and also as to the appellee taking into his possession the property before the due date of the debt secured by the trust deed executed by appellant, and this is the only contention made by counsel we regard as significant since it is a fundamental law that a minor cannot reap the benefit of his own misrepresentations for fraudulent acts and thereby defeat an innocent party dealing with him without refunding the property obtained or putting the party with whom he dealt *in statu quo. Ostrander* v. *Quinn, et al.,* 36 So. 257, 84 Miss. 230; *Comander* v. *Breazeale,* 41 So. 497.

*Byrd & Byrd,* for appellee.

Parker, as shown by the evidence in the case, was attempting to remove the live stock from the county and put it beyond the reach of Sanford or his trustee. There is no express provision in the deed of trust authorizing the taking of the property before the maturity of the note, but unless the property has been taken, Sanford would have lost his money, and we submit that under the general principles of law, no one is required to sit idly by and see his property destroyed or placed beyond his reach without taking steps to protect his interest.

Conceding it to be a fact, for the present, that Parker was a minor at the time he executed the note and the trust deed on the live stock in question, we submit that he cannot retain the property and refuse to pay the debt. The original consideration for this debt was the purchase money of these horses. There is no principle of law that will allow a person to retain the property and at the same time refuse to pay the purchase money. This property was redeemed from a prior deed of trust, given to Parker, by Sanford, he paying the debt and in effect selling the live stock to Parker. Surely, he cannot hold the property and refuse to pay the debt even though he was a minor at the time he purchased the property.

The note was due at the time of the trial, in the lower court, and he did not pay or offer to pay the debt, and his right to recover was thereby lost in so far as the terms of the deed of trust are concerned.

SMITH, C. J., delivered the opinion of the court.

On January 7, 1912, appellant was the owner of two horses here in question, upon which there was a deed of trust executed by him to secure a debt due by him to the holder thereof. In order to pay off this deed of trust he borrowed from appellee Sanford the sum of one hundred and fifty-two dollars and fifty cents, executing to him his note therefor due on the 1st day of December, 1912, secured by a deed of trust upon the horses. This money was used in paying off the prior deed of trust. In March following, appellee Gillis, trustee in this deed of trust, at the request of Sanford, took possession of these horses for the purpose of selling them and applying the proceeds to the payment of the debt due Sanford, claiming that they were being dealt with by appellant in such manner as to impair the lien of the deed of trust. This suit, which is one in replevin, was then instituted by appellant to recover from Gillis and San-

ford the possession of the horses. At the close of the evidence there was a peremptory instruction for appellees. This instruction is claimed by appellant to be erroneous on two grounds:

The first ground is because the evidence discloses that he was a minor at the time of the execution of the note and deed of trust. There was evidence to the effect that appellant was a minor at the time of the execution of this deed of trust, and, if the fact be that he was such, then he was entitled to repudiate his contract. This objection to the peremptory instruction is therefore well taken.

The second ground upon which this instruction is objected to is that, at the time Gillis took possession of these horses, the note executed by appellant had not matured, and the deed of trust securing it contains no provision authorizing the trustee to take possession of the property until condition broken. It is true that this deed of trust contains no provision authorizing the trustee to take possession of the property therein conveyed for any reason prior to the maturity of the note thereby secured; consequently the taking of the property by appellees was wrongful, and, at the time this suit was instituted, appellant was entitled to the return thereof. *Buck* v. *Payne,* 52 Miss. 271. When the cause was tried, however, the note secured by this deed of trust was past due, and therefore appellees then had the right to possession of the property, provided appellant was not a minor at the time of the execution of the deed of trust. What appellant's rights are in this connection, with reference to court costs and damages for the unlawful taking, are not before us, and we therefore express no opinion thereon.

Appellees claim that this loan was procured by appellant by means of a fraudulent representation; the representation being that he had rented certain land on which he would make a crop during the year 1912, and the exhibition to Sanford of a note from the owner of

this land waiving any lien for supplies to be furnished, when in truth and in fact he had not rented this land, and had made no arrangement to make a crop thereon, and therefore appellee Sanford had the right to rescind his contract with appellant and to have the deed of trust foreclosed without waiting for the maturity of the note. It may be conceded that appellees had the right to disaffirm Sanford's contract with appellant and to proceed in the proper court to obtain whatever relief to which they became thereby entitled, as to which we, of course, express no opinion, for the attempt here is not to disaffirm the contract but to enforce it. Appellees' right to the possession of the property, in so far as this controversy is concerned, depends solely upon the deed of trust.

*Reversed and remanded.*